UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MACK PEREZ-TEJADA, ROGER RICKS II, ROY MCELROY, ASHRAF MESHRIKY, EZENWA ONUKWUE, ROBERT LAMANTIA, BRYCE WILLIAMSON and MARK A. TURNER; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MATTRESS FIRM, INC., KENNETH MURPHY and JIM BLACK, <br><br> Defendants. | Civil Action No. 17-12448-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                    February 21, 2019

### I. Introduction

Plaintiffs Mack Perez-Tejada ("Perez-Tejada"), Roger Ricks II ("Ricks"), Roy McElroy ("McElroy"), Ashraf Meshriky ("Meshriky"), Ezenwa Onukwue ("Onukwue"), Robert LaMantia ("LaMantia") Bryce Williamson ("Williamson") and Mark A. Turner[1] (collectively, "Plaintiffs")[2] bring this class action on behalf of themselves and all others similarly situated against Defendants Mattress Firm, Inc. ("Mattress Firm"), Kenneth Murphy ("Murphy") and Jim Black ("Black")

---

[1] Defendants have been unable to find employment records for Turner and indicate Plaintiffs will seek to dismiss Turner voluntarily. D. 37 at n.1. Plaintiffs have now confirmed that intention. D. 52 at 1 n.1.

[2] On January 7, 2019, Plaintiffs moved to amend further the first amended complaint, D. 51, to add four named plaintiffs. This Memorandum and Order is based on the still operative pleading, the first amended complaint.

1

(collectively, "Defendants"). Plaintiffs assert claims for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), Massachusetts wage law, Mass. Gen. L., c. 151 § 1A-1B and New York Labor Law, Art. 19, § 650. Defendants have moved to compel individual arbitration and for a stay of the court proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, on the grounds that the dispute is covered by an arbitration agreement. D. 36, 48. The Court ALLOWS the Defendants' amended motion to compel individual arbitration and stay of these proceedings. D. 36, 48.

## II. Standard of Review

When ruling on a motion to compel arbitration, courts should "draw [upon] the relevant facts from the operative complaint and the documents submitted [] in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018). Courts have consistently applied a summary judgment standard, prompting courts to "consider facts in the light most favorable to the [non-movant] . . . and exercise its 'wide discretion' to look beyond the complaint at pleadings and documents submitted by either party." Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123 (D. Me. 2004) (quoting Anderson v. Delta Funding Corp., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004) (internal quotation marks omitted)).

## III. Relevant Facts

The following facts are undisputed unless otherwise noted.

Mattress Firm is a nationwide mattress retail chain. D. 11 ¶ 15. It employs approximately 7,000 sales associates across the United States, including Massachusetts and New York. Id. ¶¶ 16, 29, 37. Defendant Murphy is the President and Director of Mattress Firm, id. ¶ 10, and Defendant Black is the Treasurer, id. ¶ 11. Plaintiffs worked as "inside sales" employees for Mattress Firm at all relevant times. Id. ¶ 19. Specifically, Plaintiffs sold products to Mattress Firm customers at

its retail stores.  Id. ¶ 20.  As alleged, Plaintiffs worked more than forty hours a week and did not receive overtime pay.  Id. ¶ ¶ 67, 73, 77, 81.  Plaintiffs were all managers-on-duty, which is an entry-level sales position.  D. 37-1 ¶¶ 4-7, 9-11.

On March 23, 2016, an email from Human Resources was sent to all Mattress Firm employees.  D. 37-1 at 6-7.  This email contained a copy of the Mutual Arbitration Agreement (the "Agreement") and requested that the employees first watch a video on "MFRMtv" explaining the significance of the Agreement and thereafter either execute electronically via DocuSign or complete the opt-out process.  Id. at 6.  The Agreement states in relevant part:

> **Arbitration.** . . . both Mattress Firm [] and you agree to resolve any and all claims, disputes, or controversies arising out of or relating to your application for employment, your employment with the Company and/or the termination of your employment exclusively by arbitration to be administered by a neutral arbitration agency to be agreed upon by the parties. . . .
>
> **Covered Claims.**  Some, but not all, of the types of claims covered are: unpaid wages, overtimes or other compensation. . . You and the company agree that the parties are subject to the Federal Arbitration Act ("FAA") and that this Agreement shall be enforceable pursuant to and interpreted in accordance with the FAA.
>
> **Class Action, Collective Action and Representative Action Waiver.** . . . All claims covered by this Agreement are intended to be brought and resolved on an individual basis. Both you and the Company are waiving any right to bring claims as class, collective, or representative actions.
>
> **Arbitrability.**  The Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretations, applicability, enforceability, or formation of this Agreement. . . .
>
> **The Parties.**  For the purposes of the scope of the obligation to arbitrate, claims against the "Company" shall include claims against all parent and subsidiary and related companies, specifically including, but not limited to Mattress Firm [] and the Sleep Train, Inc., as well as their respective officers, directors, managers, supervisors, employees (current and former) . . . .

D. 37-2 at 2-14.

Employees had the choice of opting-out of the Agreement by requesting an "Opt Out form" via the email address listed in the body of the email.  D. 37-1 at 6.  Employees were required to

3

return this form no later than April 23, 2016.  Id.  The March 23 email also indicated that clicking the "Decline to Sign" option within DocuSign "was not a valid option for the fulfillment of [the Agreement]."  Id.  Finally, the employees were urged to contact a human resources representative or manager with any questions.  Id. at 7.  The same email was sent again two days later on March 25, 2016.  Id. at 12-13.  On April 11, 2016, Mattress Firm circulated another email to all employees with a link to view the video explaining the arbitration program.  Id. at 9-10.  Additionally, the email indicated that "[a]rbitration [] [i]s an alternative to litigation in the courts" and that "it works like a less formal version of a lawsuit that is decided by an impartial arbitrator instead of judge and a jury."  Id. at 10.  Diane Penoyer-Hanratty, the Human Resources Director at Mattress Firm, attested that "associates also received almost daily reminders via email to review and sign the [Agreement] or exercise their right to opt out."  Id. at 2 ¶ 3.  She affirmed that "[s]ales associates regularly receive communications related to their employment to their Mattress Firm email accounts" and that "they also send and receive correspondence to and from their accounts in the course of performing their job duties as sales associates, often on a daily basis."  Id. at ¶ 3.

Plaintiff Ricks received the Agreement in March 2016 and viewed the Agreement on April 7, 2016.  D. 39-1 ¶ 7.  Plaintiffs McElroy, Onukwue and LaMantia received and signed the Agreement as part of Mattress Firm's new hire process between April 2016 and August 2017.  Id. at ¶ 6; see also D. 37-2 at 1-4, 10-11.  Plaintiffs Perez-Tejada, Meshriky and Williamson each became employees of Mattress Firm following its February 2016 acquisition of Sleepy's, however, they were not integrated into Mattress Firm's payroll and benefits system until several months later.  D. 39-1 ¶ 4.  As part of the integration process, Perez-Tejada, Meshriky and Williamson were each provided with a copy of the sales associate handbook, code of conduct, an employee

reimbursement agreement and the Agreement, which they all executed, id., between September and December 2016. See D. 39-1 at ¶ 4; see also D. 37-2 at 6-7, 8-9, 13-14.

Six of the seven Plaintiffs electronically executed the Agreement via DocuSign. D. 37-2 at 2-14. Ricks neither executed nor opted out of the Agreement, D. 37-1 at ¶ 7, although he received the Agreement on March 23, 2016, and viewed the document on April 7, 2016. D. 39-1 at ¶ 7. Ricks also received a printable copy of the Agreement on April 7, 2016. Id. On April 24, 2016, Ricks received a notification that the thirty-day time period to sign the Agreement or to opt out had expired. Id. The email Ricks and other Mattress Firm employees originally received on March 23, 2016 explained that if an employee neither signed the contract or completed the opt out form "by April 23, 2016, you are bound by the Arbitration Agreement." D. 37-1 at 6.

## IV. Procedural History

Plaintiffs initiated this matter on December 12, 2017. D. 1. On January 12, 2018, Plaintiffs filed the first amended complaint on behalf of themselves and a proposed class asserting the following claims against Defendants: violations of 29 U.S.C. § 207(a)(1) (Count I), violations of Mass. Gen. L. c. 149, §§ 148, 150; c. 151, § 1A-1B (Count II), violations of Mass. Gen. L. c. 149, §§ 148, 150; c. 151, § 1A-1B; c. 136, § 6 (Count III) and violations of New York Labor Law Art. 19, § 650, et seq. (Count IV). D. 11 at 14-17. The proposed class is defined as "[a]ll persons who worked as inside sales employees for Mattress Firm at any time in the three years prior to the filing of this [c]omplaint, who have not been compensated at a rate of 1.5 times the regular rate of pay for all hours worked in excess of forty (40) per workweek." Id. The Defendants moved to compel individual arbitration and for a stay of proceedings pursuant to the FAA on June 8, 2018. D. 36. The Court heard the parties on the motion on August 8, 2018 and took the matter under advisement. D. 40.

On October 8, 2018, Mattress Firm filed a suggestion of bankruptcy. D. 41. The Court asked the parties to file a joint statement as to whether a stay was required for the entire case and all Defendants or just Mattress Firm. D. 42. In their joint statement, the parties agreed to enter into a stay as to all Defendants. D. 43. The Court instituted the stay on October 17, 2018. D. 44. On November 16, 2018, pursuant to the stay, the Court denied the motion to compel arbitration, D. 36, without prejudice to renew. D. 45. Defendants gave notice of the lifting of the automatic stay on November 28, 2018. D. 46. On November 30, 2018, Defendants renewed their motion to compel arbitration, D. 48, and the Court now addresses it.

V.  **Discussion**

Defendants argue that, pursuant to the Agreement, Plaintiffs agreed to submit all employment matters, including the claims asserted here, to binding arbitration and to waive their right "to bring claims as class, collective, or representative actions." D. 37 at 8-14. Defendants have also requested a stay of the court proceedings until arbitration is complete. Id. at 14-15. For the reasons given below, the Court holds that 1) there is a valid arbitration agreement; 2) Defendants are entitled to invoke the Agreement; 3) Plaintiffs are bound by the Agreement; and 4) the asserted claims fall within the scope of the Agreement.

A.  **Legal Standards Governing Arbitration**

The "FAA compels judicial enforcement of a wide range of written arbitration agreements." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001). The purpose of the Act is to put arbitration provisions on the "same footing as other contracts." Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No 96, 68th Cong., 1st Sess., 1-2 (1924)). Accordingly, under section 2 of the FAA, a "written provision in any. . . contract. . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. The Supreme Court has stated that "the FAA was designed to promote arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 345 (2011), and "[s]ection 2 embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). It is well established that "[w]hether or not the parties have agreed to submit a certain dispute to arbitration 'depends on contract interpretation, which is a question of law'" appropriate for judicial determination. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)); see AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., 475 U.S. at 648 (quoting United Steelworkers of Am. v. Warrior Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

Accordingly, a "party who is seeking to compel arbitration must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr. Inc., 638 F.3d 367, 375 (1st Cir. 2011)). The parties do not dispute that Plaintiffs' allegations regarding unpaid overtime fall within the Agreement so the Court will analyze the remaining three factors.

### B. The Agreement is Valid

The first step in determining the arbitrability of Plaintiffs' claims is deciding "whether . . . there exists a written agreement to arbitrate." Lenfest v. Verizon Enter. Sols., LLC, 52 F. Supp. 3d 259, 263 (D. Mass. 2014). "[I]f the contract containing the arbitration agreement was never

7

binding on the [P]laintiffs, the arbitration clause cannot be enforced against them." Cullinane v. Uber Techs., Inc., No. CV 14-14750-DPW, 2016 WL 3751652, at *4 (D. Mass. July 11, 2016), rev'd on other grounds, 893 F.3d at 64. The party seeking to enforce an arbitration agreement is tasked with proving by "a preponderance of the evidence, the existence of a valid and binding agreement to arbitrate." Acher v. Fujitsu Network Commc'ns, Inc., 354 F. Supp. 2d 26, 36 (D. Mass. 2005); see Kahan Jewelry Corp. v. Venus Casting, Inc., 17 Misc. 3d 684, 691 (N.Y. Sup. Ct. 2007). If the validity of the agreement is not clear on its face, courts look to "whether the parties expressed an intention to arbitrate." Sec'y. v. Mass. Org. of State Eng'rs and Scientists, 408 Mass. 837, 839 (1990); see Life Receivables Tr. v. Goshawk Syndicate 102 at Lloyd's, 888 N.Y.S.2d 458, 460 (N.Y. App. Div. 2009) (McGuire, J., concurring).

"A valid and enforceable contract under Massachusetts law exists when the parties agree to 'the material terms' and 'have a present intention to be bound by that agreement.'" Shen v. CMFG Life Ins. Co., No. CV 15-11593-MLW, 2016 WL 1129308, at *5 (D. Mass. Mar. 4, 2016) (citing Situation Management Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass.2000)), report and recommendation adopted, No. CV 15-11593-MLW, 2016 WL 1189125 (D. Mass. Mar. 22, 2016). "It is well established in Massachusetts that the essential elements of a contract are an offer, acceptance, and an exchange of consideration or meeting of the minds." Vadnais v. NSK Steering Sys. Am., Inc., 675 F. Supp. 2d 205, 207 (D. Mass. 2009).

1. *Offer and Acceptance of the Agreement and the Parties' Meeting of the Minds*

Defendants sent an email about arbitration to all Mattress Firm employees on March 23, 2016. D. 37-1 at 6. In the email, Defendants indicated an arbitration form was attached requiring action from all employees. Id. at 6. The email also instructed the employees to watch a video on Mattress Firm's internal television, explaining the impact of the Agreement on the employees. Id.

8

The employees were given an option to either execute the Agreement or opt out by executing an opt-out form. Id. Plaintiffs Perez-Tejada, Meshriky and Williamson, who became Mattress Firm employees after the acquisition of Sleepy's in February 2016, were each provided with and executed the Agreement as part of the integration process. D. 39-1 ¶ 4. Plaintiffs McElroy, Onukwue and LaMantia were hired after the initial roll out of the arbitration program and were thus not included in the March 23, 2016 firm wide emails, but each was similarly provided with the Agreement as part of the new hire paperwork and executed the Agreement prior to their respective start dates. Id. ¶ 6.

With respect to Plaintiff Ricks, although he did not execute the Agreement, he failed to opt out of the Agreement in the timeframe provided. As previously discussed, an email containing the Agreement was sent to Ricks on March 23, 2016. D. 39-1 at 15. The undisputed facts reflect that on April 7, 2016, Ricks viewed the email, received a hard copy of the Agreement and, that evening, received the same email again. Id. These emails gave Ricks notice that he would be bound by the Agreement if he failed to exercise his option to opt out by April 23, 2016. D. 37-1 at 6, 9, 12; see Barrasso v. Macy's Retail Holdings, Inc., No. 1:15-cv-13098-ADB, 2016 WL 1449567, at *2 (D. Mass. Apr. 12, 2016) (finding that the arbitration clause is valid when plaintiff failed to opt out within the thirty days' time allotted); Rivera-Colon v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200, 211 (1st Cir. 2019) (finding intent to accept arbitration agreement from plaintiff's silence when silence as acceptance was "laid out nose-to-face plain and simple in the emails" she received). At least three of the communications Ricks received state in bold, caps as follows: "IF YOU DO NOT DELIVER THE [OPT OUT] FORM BY EXPIRATION OF THE THIRTY DAY PERIOD, AND IF YOU ACCEPT OR CONTINUE EMPLOYMENT WITH THE COMPANY AFTER SUCH DATE, YOU WILL BE DEEMED TO HAVE ACCEPTED AND AGREED TO

THE TERMS OF THIS AGREEMENT." D. 37-2 at 7, 9, 14.  Additionally, each of the emails contained information regarding the opt out option.  D. 37-1 at 6, 9, 12.

Plaintiffs do not dispute that the six plaintiffs other than Ricks received and electronically executed the written Agreement, D. 37-2 at 2-14.  Instead they argue that the Agreement is unenforceable because of allegedly conflicting information about its formation.  D. 38 at 6-9. Specifically, Plaintiffs contest the Agreement's validity based on inconsistencies concerning Perez-Tejada's receipt and execution of the Agreement casts doubt on the existence of a valid agreement to arbitrate—not only for Perez-Tejada, but for all the remaining Plaintiffs.  D. 38 at 3. Plaintiffs contend that because Perez-Tejada continued to use Sleepy's administrative systems post acquisition, until October 29, 2016, the validity of the Agreement is in question.  Id. at 3-4. Plaintiffs further argue that because the executed Agreement of Perez-Tejada was not included in the personnel record produced by Defendants prior to the filing of the complaint, the Court should find that the Agreement is invalid.  Id. at 4.  Nowhere do Plaintiffs deny their receipt and, with the exception of Ricks, execution of the Agreement.

The Court concludes that none of the alleged inconsistencies in the formation of contracts render the Agreement invalid.  Plaintiffs' signatures on the Agreement and, in Ricks' case, failure to opt out indicate their intention to enter into an agreement to arbitrate matters relating to wages and compensation.  See Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 298 (D. Mass. 2016) (holding that drivers manifested assent to arbitrate when they electronically clicked the "I accept" button on the arbitration provision).  As to Plaintiffs' argument that Defendants failed to show Plaintiffs actually read the terms of the Agreement prior to executing, this argument also fails because, absent fraud, which Plaintiffs do not allege, "a person who signs a written agreement is bound by its terms whether [he] reads and understands them or not."  DeLuca v. Bear Stearns & Co., 175 F.

Supp. 2d 102, 115 (D. Mass. 2001); see Tiffany v. Sturbridge Camping Club, Inc., 32 Mass. App. Ct. 173, 176 n. 5 (1992). Even a "'grumbling acceptance,' that is, a comment, purported clarification, or expression of dissatisfaction appended to an acceptance, constitutes an acceptance nonetheless." DeLuca, 175 F. Supp. 2d at 116 (internal citation omitted). Additionally, contrary to Plaintiffs' assertion, there is no legal obligation for Defendants to have explained the Agreement "to Plaintiffs' satisfaction." Ellerbee v. GameStop, Inc., 604 F. Supp. 2d 349, 355 (D. Mass. 2009). Instead, Defendants were required to "give Plaintiff[s] the information sufficient to put a reasonably prudent employee on adequate notice of the agreement to arbitrate." Id. The Court finds Defendants satisfied this requirement by sending emails to all of its employees calling special attention to the Agreement, included a video explaining its impact, inserted clear warning language in the Agreement and provided all of its new and integrated employees with the Agreement as part of the new hire process. D. 37-1 at 2, 6; D. 39-1 ¶ 4.

Against this background, the Court concludes the six plaintiffs who executed the Agreement accepted the Agreement. By failing to opt out and continuing to work, Ricks also accepted the Agreement. See Ellerbee, 604 F. Supp. 2d at 355; Barrasso, 2016 WL 1449567, at *2; Rivera-Colon, 2019 WL 211418, at *8; see also Okereke v. Uber Techs., Inc., No. CV 16-12487-PBS, 2017 WL 6336080, at *6 (D. Mass. June 13, 2017) (finding that plaintiff's failure to opt out within thirty days after receipt of the agreement also indicated acceptance of its terms).[3] Based on the record and for the reasons discussed above, the Court finds that the parties agreed to

---

[3] While Plaintiffs question the date of Ricks' receipt of the Agreement, Plaintiffs have not provided any evidence contradicting the date Defendants have asserted and they have not denied that Ricks received the Agreement. D. 38 at 3. Merely pointing out the initially erroneous dates that the Defendants have corrected in their reply, D. 39-1 ¶ 7, does not render Ricks' acceptance invalid.

the material terms of the arbitration agreements and had a present intention to be bound by those agreements.

   2. *Adequate Consideration*

   The Court is also unpersuaded by Plaintiffs' allegations of a lack of adequate consideration for the Agreement. The Court notes that "it is well settled that the mutual promises of the parties in an agreement for arbitration are sufficient consideration each for the other." Gonzalez v. GE Grp. Adm'rs, Inc., 321 F. Supp. 2d 165, 169 (D. Mass. 2004) (quoting Pond v. Harris, 113 Mass. 114, 118 (1873)); see Dempsey v. George S. May Int'l Co., 933 F. Supp. 72, 75 (D. Mass. 1996). That is, the mutual promise to arbitrate is a bargained-for exchange affording both a legal detriment and a corresponding benefit to the parties. See DeLuca, 175 F. Supp. 2d at 112; Dempsey, 933 F. Supp. at 75. Additionally, the First Circuit, in applying similar caselaw from other states in the circuit, has repeatedly ruled that continued employment also constitutes adequate consideration even when not expressly stated as such. See Britto v. Prospect Chartercare SJHSRI, LLC, 909 F.3d 506, 513 (1st Cir. 2018) (noting that "the judge properly ruled that [defendant]'s promise of continued employment provided sufficient independent consideration to make the [arbitration] agreement enforceable"); Soto v. State Indus. Prods., Inc., 642 F.3d 67, 74 (1st Cir. 2011) (rejecting the argument that continued employment is inadequate consideration); Bekele, 199 F. Supp. 3d at 294; Ellerbee, 604 F. Supp. 2d at 354 ; Manigault v. Macy's E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009); see also DeLuca, 175 F. Supp. 2d at 112 (concluding that consideration exists where "absent an exception, an at-will employee can be terminated for refusal to sign an arbitration agreement" and "if plaintiff were an at-will employee, her continuing to work would provide the necessary consideration for the new arbitration agreement"). Here, it is undisputed that all seven plaintiffs were at-will employees and that each one continued employment after executing the

Agreement or failing to opt out. In addition, each employee had notice of the Agreement. Campbell v. General Dynamics Gov't Sys. Corp., 407 F.3d 546, 555 (1st Cir. 2005) (explaining that "[t]he appropriateness of enforcing an agreement to arbitrate …[a] claim hinges on whether, under the totality of the circumstances, the employer's communications to its employees afforded 'some minimal level of notice' sufficient to apprise those employees that continued employment would effect a waiver of the right to pursue the claim in a judicial forum"). The record demonstrates that the Defendants have met their burden to show adequate consideration for the Agreement.

### C. Defendants Are Entitled to Invoke the Arbitration Agreement

Per the terms of the Agreement, arbitration is required between the employees, including the Plaintiffs here, and Mattress Firm, Inc. D. 37-2 at 1. The Agreement goes on to define claims against "Mattress Firm, Inc." to include "claims against all parent and subsidiary and related companies . . . as well as their respective officers, directors, managers, supervisors, employees (current and former) and any trade names or alleged joint employers." Id. at 2. Accordingly, the claims against Defendants Murphy and Black, officers of Mattress Firm, are, therefore, covered under the Agreement. See D. 37-2 at 3, 5, 7, 9, 12; see also Paradise v. Eagle Creek Software Servs., Inc., 989 F. Supp. 2d 132, 143 (D. Mass. 2013) (internal citation omitted). The claims against Defendants Murphy and Black are therefore subject to arbitration to the same extent as the claims against Defendant Mattress Firm.

### D. The Agreement was Not Unconscionable

Plaintiffs contend that even if the Agreement was valid, it would be unenforceable on unconscionability grounds. D. 38 at 11-16. Whether an arbitration agreement is unconscionable is a question of law that is proper for the Court to decide and Plaintiffs face a "heavy burden" in

proffering such an argument. Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999). Pursuant to Massachusetts law, "[u]nconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party. . .". Waters v. Min Ltd., 412 Mass. 64, 68 (1992). "[T]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." Storie v. Household Int'l, Inc., No. CIV.A. 03-40268-FDS, 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005).

Here, the Plaintiffs have not proven substantive or procedural unconscionability. As to procedural unconscionability, as discussed above, Plaintiffs received several procedural protections, including multiple notices of the Agreement, D. 37-1 at 2 ¶ 3; 37-1 at 6-7; 37-1 at 12-13, and a link to a video explaining the arbitration process, D. 37-1 at 9-10. Additionally, the Plaintiffs had a choice to opt out within thirty days, execute the Agreement or terminate their employment. The argument that the Agreement may be viewed as a "contract of adhesion" because Defendants "deemed employees to have accepted irrespective of whether they viewed the Agreement or were aware of its terms," even if true, does not render the Agreement procedurally unconscionable. D. 38 at 13; see McInnes v. LPL Fin., LLC, 466 Mass. 256, 266 (2013) (noting that "contracts [of adhesion] are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances") (internal citation and quotation omitted). As mentioned above, absent fraud, Plaintiffs are bound by the Agreement they signed irrespective of whether they read and understood its terms. See DeLuca, 175 F. Supp. 2d at 115; see also

Tiffany v. Sturbridge Camping Club, Inc., 32 Mass. App. Ct. 173, 175 n. 5 (1992). As to substantive unconscionability, Plaintiffs argue that the Agreement's unconscionability stems from Defendant's reservations of its rights to "unilaterally" modify the terms of the Agreement. D. 38 at 16. The modification clause states that "the Agreement may be modified or terminated by the Company after thirty days written notice to [Plaintiffs]" and that "[a]ny modifications or terminations shall be prospective only and shall not apply to any claims or disputes that are pending in arbitration or that have initiated by either party." D. 37-2 at 3, 5, 7, 9, 11. This modification clause is not objectively oppressive. Although the Defendants reserve the rights to modify, the modification clause requires that Defendants must provide Plaintiffs with thirty days written notice, at which point, Plaintiffs presumably would have a choice of continuing their at-will employment. This coupled with the fact that any modification would be prospective and excludes pending claims or disputes undermines Plaintiffs' contention as to the unconscionability of the clause. See id. Finally, Plaintiffs' argument that there was a "gross disparity in the consideration" of the Agreement, D. 38 at 16, also fails because, as discussed above, the Court concludes there was adequate consideration to support the Agreement. In sum, Plaintiffs have not met their burden of proving unconscionability—either procedural or substantive—that would invalidate the Agreement.

### E. The Collective Action Waiver is Enforceable

In addition to their arguments challenging the arbitration provision of the Agreement, Defendants urge the Court to uphold the Agreement's prohibition on collective actions. D. 37-2 at 2-14. In support of the enforceability of same, Defendants cite to the recent Supreme Court holding in Epic Sys. Corp. v. Lewis, __U.S.__, 138 S. Ct. 1612 (2018). D. 37 at 13-14. In Epic Systems, plaintiff employees urged the Court to find that the requirement of individualized

arbitration rendered the arbitration agreements illegal under the National Labor Relations Act. Epic Sys., 138 S. Ct. at 1622. The Supreme Court declined to adopt plaintiffs' position because doing so would have "interfered with a fundamental attribute of arbitration." Id. at 1622. Prohibiting class action waivers would have the effect on arbitration of "tak[ing] much time and effort and introduce[ing] new risks and costs for both sides" and "arbitration would wind up looking like the litigation it was meant to displace." Id. at 1623. "[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." Id. (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344-351 (2011)). The Supreme Court concluded that "Congress has instructed that arbitration agreements like those before us must be enforced as written." Id. at 1632. In analyzing similar collective action waiver provisions here, the Court is bound by Supreme Court precedent and finds no reason to set aside the plain language of the valid and enforceable Agreement.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to compel individual arbitration. D. 36, 48.[4]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4] In light of this ruling, the Court DENIES the Plaintiffs' motion to amend the first amended complaint, D. 51, as moot.